IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ANTHONY RAY WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 6:15-CV-02060-JO |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner | ) | OPINION AND ORDER |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.

Plaintiff Anthony Ward appeals the Commissioner's decision denying his concurrent applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Ward alleged disability due to migraines, pain in the back, neck, shoulder and knees, limited reading and writing ability, and nose bleeds. Admin. R. 272. He initially alleged lifelong disability, but, at his administrative hearing, amended the alleged onset date to January 1, 2010. Admin. R. 21, 71, 223, 234. He satisfied the insured status requirements of the Social Security Act through

-1-    OPINION AND ORDER

September 30, 2014, and must establish that he was disabled on or before that date to prevail on his Title II claim. *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ applied the sequential disability determination process described in the regulations and in *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found that Ward's ability to work was adversely affected by headaches, dyslexia, osteoarthritis in the left knee, degenerative disc disease, social phobia, learning disorder, and intermittent explosive disorder. Admin. R. 24. The ALJ found that, despite these impairments, Ward retained the residual functional capacity ("RFC") to perform the full range of light work. Admin. R. 26. The ALJ determined that Ward could not perform any of his past relevant work, all of which involved medium or heavy exertion. Admin. R. 29-30. The ALJ applied the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2 to Ward's vocational factors of age, education, and RFC. These factors directed a finding of "not disabled" under Rule 202.18 of the Medical-Vocational Guidelines. Admin. R. 30. The ALJ concluded that Ward was not disabled within the meaning of the Social Security Act. Admin. R. 30-31.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence may be less than a preponderance of the evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Under this standard, the court must consider the record as a whole, and uphold the Commissioner's factual findings that are

supported by inferences reasonably drawn from the evidence even if another interpretation is also

rational. *Robbins*, 466 F.3d at 882; *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th

Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039 –40 (9th Cir. 1995).

## ASSIGNMENTS OF ERROR

The claimant bears the burden of showing that the ALJ erred and that any error was harmful.

*McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011).   Ward contends the ALJ improperly

discredited his subjective statements and discounted the opinions of two consultative examiners,

Judith Eckstein, Ph.D., a psychologist, and Anthony Glassman, M.D., a specialist in physical

medicine.   Ward also contends the ALJ failed to properly develop the record regarding his mental

impairments.   These errors, Ward argues, led the ALJ to assess his RFC in a manner that did not

reflect all of his functional limitations and to improperly apply the Medical-Vocational Guidelines.

## DISCUSSION

### I.    Credibility Determination

In his application papers, Ward alleged primarily physical impairments causing pain in his

back, neck and knees.   Admin. R. 272.   At the administrative hearing, he described his lawn care

business and said after mowing, he would feel tired and sore and would have to lie down.   Admin.

R. 52, 67.   He said he had frequent conflicts with his wife over finances.   He said that he had quit

jobs because he could not get along with people and had been fired for having a bad attitude.

Admin. R. 68-72.   Ward testified that he gets upset in crowds.   Admin. R. 66.

The ALJ accepted that Ward's medically determinable impairments could reasonably be

expected to cause some degree of the symptoms he alleged.   Admin. R. 26. Under such

circumstances, an ALJ must assess the credibility of the claimant's subjective statements regarding

the severity of symptoms. An adverse credibility determination must include specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tomasetti v. Astrue*, 533 F.3d at 1039.

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ's decision demonstrates that he considered all the evidence relating to the proper factors for evaluating credibility. The ALJ observed that the objective medical evidence did not support the severity of limitation Ward alleged. Admin. R. 28. Lack of support in the objective medical evidence for a claimant's subjective claims regarding the severity of symptoms cannot be the sole basis for discrediting the claims, but is a proper factor in the credibility analysis to the extent it shows whether the claims are consistent with the record as a whole. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007); *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005); *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).

As the ALJ found, the record contains little objective medical evidence of any condition that would produce chronic disabling pain. Before the alleged onset of Ward's disability, diagnostic imaging showed osteoarthritic changes in his left knee but ligaments were intact and he had no

-4-    OPINION AND ORDER

abnormality of the meniscus. Admin. R. 372. In October 2011, Ward sought treatment for knee and

ankle pain. His physical examination was unremarkable, except for slight swelling and tenderness

to palpation. Diagnostic imaging was also negative and the doctor diagnosed a strain. Admin. R.

353-56. In April 2012, diagnostic imaging of the spine showed no abnormalities in the lumbar

region and stable degenerative changes in the thoracic region, consistent with earlier imaging from

2009. Admin. R. 407. In February 2013, Ward had a physical examination while establishing care

with a new clinic. He complained of stiffness and pain in the hands and tenderness over the lumbar

muscles. His ranges of motion, muscle strength and tone, gait, station, and neurological exam were

all normal. Admin. R. 441. In July 2013, a physical examination was normal except for diffuse

tenderness over the lumbar spine. Admin. R. 430. This absence of remarkable clinical findings and

objective evidence from imaging supports the ALJ's statement that the objective medical evidence

did not support the severity of limitation Ward alleged. Admin. R. 28.

　　　The ALJ considered Ward's treatment history, which included long periods during which he

sought no treatment. An inadequately explained failure to seek treatment for allegedly debilitating

symptoms may cast doubt on the claimant's sincerity. *Flaten v. Sec'y of Health & Human Serv.*, 44

F.3d 1453, 1464 (9th Cir. 1995); *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1993); *Bunnell v.*

*Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991). Notably, although Ward alleged he became disabled

on January 1, 2010, he did not go to the doctor thereafter until July 2010, when he sought treatment

for acute bronchitis. Admin. R. 357. He did not seek treatment for any of his allegedly disabling

conditions until late the following year. When a claimant alleges a disabling condition, but does not

seek treatment for months after the onset, it supports an adverse inference as to the credibility of the

allegation. *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001).

-5-　　OPINION AND ORDER

The treatment record reflects that Ward rarely sought treatment for his alleged physical impairments. For example, in October 2011, Ward sought treatment for an acute strain of the left knee resulting from overexertion while working two jobs. Admin. R. 28, 353-56. Otherwise, he did not require treatment for his allegedly disabling back, neck, and knee pain. He reportedly got along with over the counter NSAIDs. His conservative treatment history casts further doubt on his claim of debilitating pain. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Similarly, the ALJ pointed out that, despite his allegation of disabling mental impairments, Ward did not seek mental health treatment or receive medications or other therapy to alleviate the debilitating symptoms he claimed. Admin. R. 27. Ward's failure to seek treatment cannot reasonably be attributed to a lack of funds because he did get treatment for routine health problems, such as when he got acute viral bronchitis, cut his thumb, and developed a lipoma on his neck. Admin. R. 357, 359-60, 400, 437.

The ALJ also considered Ward's reported daily activities and work history. The ALJ placed great significance on Ward's self employment throughout the period for which he claims disability. Admin. R. 27-28. Ward owns, operates, and is the sole employee of a lawn care business. He said he had 20 customers for whom he did yard work on a regular basis. He maintained a pick up truck, mowers and other equipment for the business. He said he kept a home office with a personal computer he used for keeping track of customer accounts and business expenses. He prepared estimates for prospective jobs and handled billing and advertising for the business. Ward did not have enough customers to work full time at his business, and his activities are therefore not equivalent to full time work. Nonetheless, the ALJ reasonably found that Ward's self employment demonstrated he was not as limited physically as he alleged and had no mental impairment that precluded basic work activities. Admin. R. 27-28.

-6-    OPINION AND ORDER

The ALJ considered the third party lay witness report supplied by Ward's mother. Admin. R. 29, 279-285. Mrs. Ward said he had suffered back pain from scoliosis since his teenage years and that this condition was worsening with age. She said Ward suffered back pain and migraines and became frustrated and irritable over his inability to control the pain. Despite this, however, she described a wide range of self care and daily activities that the ALJ reasonably found inconsistent with total disability. Admin. R. 29.

The ALJ also pointed out that Ward received unemployment benefits during 2011, and believed this indicated that Ward was both available for and capable of working. Admin. R. 26. Ward objects that applying for unemployment benefits does not require him to hold himself out as able to perform full time work. I accept Ward's argument and find this a less than convincing reason to discount his credibility. The remainder of the ALJ's analysis is sufficiently specific to satisfy me that he did not arbitrarily discount Ward's subjective statements. The reasoning is clear and his findings are supported by substantial evidence in the record as a whole.

## II.    Medical Opinions

Ward contends the ALJ improperly discounted the opinions of two physicians who performed consultative evaluations at the request of the agency.

In May 2012, Dr. Eckstein administered a psychodiagnostic evaluation to assess the significance of Ward's reported low education level, dyslexia, and difficulty managing anger. Admin. R. 391. Dr. Eckstein did not treat Ward and noted that he had not received any mental health treatment. Dr. Eckstein found that Ward demonstrated no behavioral abnormalities. His thought process was logical and coherent and he was fully oriented. He made appropriate eye contact without abnormalities of speech or motor movement. Admin. R. 393. Dr. Eckstein administered

cognitive tasks which suggested that he had a weak fund of information, slightly below average short term memory, only basic arithmetic skills, and a concrete thinking style. Admin. R. 394. Dr. Eckstein opined that Ward's chronic pain and difficulty with anger were lifelong issues, predating the alleged onset of disability. She opined that Ward would have difficulty remembering instructions unless they were simple and repetitive and would do best with tasks that are rote and require little contact with others. Admin. R. 395.

In January 2014, without having seen Ward in the interim, Dr. Eckstein completed a mental residual functional capacity worksheet indicating Ward would have significant limitations in the ability to understand and remember detailed instructions, to carry out short, simple instructions, and to sustain an ordinary work routine without special supervision. Admin. R. 413-15. She concluded that Ward would be unable to perform competitive work 80% of the time. Admin. R. 416.

The ALJ gave Dr. Eckstein's opinion significantly reduced weight in reaching his decision. Admin. R. 27-28. An ALJ may discount the opinion of an examining doctor by making findings setting forth specific, legitimate reasons supported by substantial evidence in the record as a whole. *Thomas v. Barnhart*, 278 f.3d at 957; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An uncontradicted opinion may be discounted for clear and convincing reasons. *Thomas*, 278 F3d at 956-57; *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). An ALJ may discount an examining doctors opinion, for example, if the claimant's level of activity is inconsistent with the restrictions in the opinion. *See e.g. Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Here, the ALJ discounted Dr. Eckstein's opinion because Ward's work history demonstrated that he could perform activities Dr. Eckstein said he could not. Admin. R. 28. The ALJ reasonably found that Ward's ability to independently run his own lawn care business, including such tasks as

-8-    OPINION AND ORDER

conferring with customers, setting up, coordinating, and scheduling jobs, keeping track of expenses and customer accounts, billing, advertising, and so forth, was inconsistent with Dr. Eckstein's opinion that he had significant limitations in the ability to understand, remember, and carry out short, simple instructions and to sustain an ordinary work routine without special supervision. His work involved more than rote tasks as well as interactions with his customers. Admin. R. 28.

Ward contends his lawn care business is not as demanding as the ALJ described, but the ALJ relied on Ward's own testimony to describe the activities involved. In any event, the ALJ's reasoning is based on rational inferences drawn from substantial evidence in the record. Even if the record could be interpreted differently, in a manner more favorable to Ward, the court must uphold an ALJ's factual findings that are supported by inferences reasonably drawn from substantial evidence in the record. *Batson,* 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

Ward also contends the ALJ failed to fully develop the record because he denied the request by Ward's attorney for IQ testing. An ALJ has a duty to fully and fairly develop the administrative record. This duty, however, is triggered when further development is necessary to resolve ambiguities or when the ALJ makes a finding that the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). These conditions are not present here.

Ward's attorney based his request for IQ testing on Dr. Eckstein's initial report in which she said that, "overall, Ward appears to be low average in his general cognitive function, likely to fall in the borderline range of normal. Intellectual assessment would be informative in this regard." Admin. R. 395. The ALJ found that Ward's ability to perform the activities required in his self employment showed he had adequate cognitive abilities to perform basic work activities. In

-9-   OPINION AND ORDER

addition, Dr. Eckstein opined that Ward's cognitive limitations were lifelong, and his work history showed that cognitive deficits did not prevent him from performing his past relevant work. In light of this evidence of Ward's cognitive functioning, the ALJ found it unnecessary to determine precisely where he fell in the low average range of intellectual function. The evidence was neither ambiguous in any significant way nor inadequate for the purposes of the ALJ's decision. He therefore declined the request for additional formal testing. Admin. R. 27. I find no error in the ALJ's development of the record.

In April 2012, Dr. Glassman performed a complete musculoskeletal evaluation focusing on Ward's complaints of migraines, knee pain, low back pain, and neck pain. Admin. R. 382. On his physical examination, Dr. Glassman found that Ward had full strength in all muscle groups, normal gait, station, reflexes and full ranges of motion. He opined that Ward was capable of work at the medium range of exertion, and was performing such work in his lawn mowing business. He said Ward's ability to stand or walk was limited to four hours a day due to osteoarthritis in the left knee. Admin. R. 387. The ALJ gave Dr. Glassman's opinion significant weight, but did not include a restriction on standing or walking in his assessment of Ward's RFC. Admin. R. 26, 28.

The Commissioner concedes that the ALJ did not give adequate reasons for rejecting Dr. Glassman's opinion regarding Ward's limitation in standing and walking, but argues that the error was harmless. An error is harmless if the ALJ's determination remains supported despite the error. *Carmickle v. Comm'r*, 533 F.3d at 1162-63 & n. 4. At a minimum, the claimant must show "a substantial likelihood of prejudice." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) quoting *Mcleod*, 640 F.3d at 888. Evaluation of error for harmlessness is an exercise of judgment based on the circumstances of each case, including consideration of "the likelihood that the result would have

been different" had there not been error. *Ludwig*, 681 F.3d at 1054 quoting *Shinseki v. Sanders*, 555 U.S. 396, 411 (2009).

Having exercised my judgment, I conclude that there was no prejudice from the ALJ's error in the circumstances of this case. If the ALJ had included a limitation of standing and walking for no more than four hours per day in Ward's RFC, it would have precluded him from performing the full range of light work. It would not, however, preclude him from performing sedentary work. Application of Ward's vocational factors of age, education, work experience and an RFC for sedentary work would produce a finding of "not disabled" under rules 201.23 through 201.25 of the Medical Vocational Guidelines in Appendix 2 of 20 C.F.R. Part 404, Subpart P. Accordingly, there is no likelihood that the outcome would have been different had there not been error and Ward has failed to show a likelihood of prejudice.

## III.   Residual Functional Capacity

Ward contends the ALJ's RFC assessment was faulty because it did not include the limitations described in his subjective statements, the opinion of Dr. Eckstein, and the opinion of Dr. Glassman. For reasons already given, I find no harmful error in the ALJ's evaluation of that evidence. An ALJ need not include limitations based on properly discounted evidence. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *Batson*, 359 F.3d at 1197.

\\\

\\\

\\\

\\\

\\\

-11-   OPINION AND ORDER

## CONCLUSION

Based on the foregoing, Ward's assignments of error cannot be sustained and the Commissioner's decision is AFFIRMED.

DATED this 29ᵗʰ day of March, 2017.

Robert E. Jones, Senior Judge
United States District Court

-12-    OPINION AND ORDER